(No. 26575.—

A. F. Cuneo, Appellee, *vs.* The City of Chicago, Appellant.

*Opinion filed March 19, 1942—Rehearing denied May 13, 1942.*

Shaw and Wilson, JJ., dissenting.

Barnet Hodes, Corporation Counsel, (Alexander J. Resa, William J. Lancaster, John J. Mortimer, and Herbert M. Abrams, of counsel,) for appellant.

Wilson & McIlvaine, (William B. Hale, Calvin F. Selfridge, George Fiedler, and Sidney K. Jackson, of counsel,) for appellee.

Mr. Justice Farthing delivered the opinion of the court:

This was an action at law brought in the superior court of Cook county to recover damages under section 13, article II, of the 1870 constitution. The trial court rendered judgment in favor of the plaintiff for $1275 and costs, from which judgment the defendant appealed.

On November 3, 1938, the city council of the city of Chicago passed an ordinance providing for the construction of a system of subways for local transportation pur-

poses, which subways were to belong to the city. One subway is located in North State street in front of the property owned by the plaintiff Cuneo. March 8, 1939, the city notified Cuneo that the subway was to be constructed in front of his real estate, that the construction would be made with all possible care, but that it was the duty of Cuneo to take measures to protect his property. April 23, 1940, the contractors constructing the ventilating shafts for the subway also notified Cuneo that they were about to start construction in front of his building and that he must take the necessary protective measures. These shafts were to be approximately thirty feet deep and were in the sidewalk space. He obtained the advice of an experienced shoring contractor and employed him to shore up his building. The cost was $1275 and there is no question raised as to the necessity or reasonableness of it. As the excavating continued, jacks were kept under the building and extended to raise it and keep it from subsiding. However there was a subsidance of the foundation which was two inches at the south and eight inches at the north end of it. The result was the fair cash market value of plaintiff's property was not reduced except in so far as this item of expense could be considered a reduction. The only damages asked were this $1275 item.

The single question presented is whether plaintiff's property has been "damaged" within the meaning of section 13, article II, of the 1870 constitution, which provides: "Private property shall not be taken or damaged for public use without just compensation." The 1848 constitution, section 11, article XIII, provided that property should not be taken or applied to public use without just compensation. This court construed that provision to require compensation only where there was an actual physical invasion of the premises affected. (*Toledo, Wabash and Western Railway Co.* v. *Morrison*, 71 Ill. 616; *City of Aurora* v. *Gillett*, 56 id. 132; *Gillham* v. *Madison County Railroad Co.* 49 id.

484; *Nevins* v. *City of Peoria,* 41 id. 502.) This construction caused great hardship in many cases where there was no actual physical injury to the land yet its value was destroyed or impaired. Unless the words "or damaged" were added in the 1870 constitution for the purpose of conserving other rights than those already protected, their insertion was superfluous. That their insertion was not superfluous was decided in *Rigney* v. *City of Chicago,* 102 Ill. 64, at page 78. That case held a physical invasion was not a prerequisite, but that other rights, if invaded, must be compensated. Thus, in *Chicago and Western Indiana Railroad Co.* v. *Ayres,* 106 Ill. 511, at page 518, this court said that the conclusion reached in the *Rigney case* was that "under this constitutional provision a recovery may be had in all cases where private property has sustained a substantial damage by the making and using an improvement that is public in its character,—that it does not require that the damage shall be caused by a trespass, or an actual physical invasion of the owner's real estate, but if the construction and operation of the railroad or other improvement is the cause of the damage, though consequential, the party damaged may recover." The *Rigney case* has been followed in *Chicago and Western Indiana Railroad Co.* v. *Ayres, supra; Chicago North Shore Street Railway Co.* v. *Payne,* 192 Ill. 239; *Illinois Central Railroad Co.* v. *Trustees of Schools,* 212 id. 406; *Barnard* v. *City of Chicago,* 270 id. 27; *Chapman* v. *City of Staunton,* 246 id. 394.

The discussion in the *Rigney case* must be considered more fully than to take a single sentence or two from the decision and say that they contain the full import of that case. There, beginning at page 80, this court recognized that every possible injury that might be occasioned by a public improvement was not intended to be reached by the change in the 1870 constitution. It then cited as examples "the building of a jail, police station or the like" which generally impair values of neighboring property and yet are

*damnum absque injuria.* But it was specifically pointed out that the present constitution was intended to afford redress in a certain class of cases for which there was no remedy under the old constitution and that where there is an obstruction created in a public street, "if it does not practically affect the use or enjoyment of neighboring property, and thereby impair its value, no action will lie." The right impaired there was that of access to and egress from the plaintiff's property situated approximately 200 feet from the street, the level of which had been changed so that plaintiff could reach it only by the use of a pair of stairs, and it was held that since the proof showed his real estate was thereby decreased in value, he could recover against the city.

Appellant relies on this language from the *Rigney case:* "In the absence of any statutory or constitutional provisions on the subject, the common law afforded redress in all such cases, and we have no doubt it was the intention of the framers of the present constitution to require compensation to be made in all cases where, but for some legislative enactment, an action would lie by the common law."

However, this language is preceded by: "In all cases, to warrant a recovery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally."

There could never have been a recovery in the *Rigney case* if it had not been for the word "damages" in the 1870 constitution. Whether an owner of property abutting on the improved street could have recovered under the 1848 constitution, as has been pointed out, depended strictly on physical invasion or trespass upon his land and there was no such thing as recovery for damages to land not invaded.

The identical question before us was decided in *Barnard* v. *City of Chicago, supra.* At page 31, it was there pointed out that other rights are now protected that were not before the adoption of the 1870 constitution. An abutting property owner's right to light and air from a public street, free from interference by a structure built in the street, was cited as an example. At common law, in this State, before the 1870 constitution, with or without a statute and an ordinance of the city, that right could not have been protected.

The appellant insists that the *Barnard case, Peck* v. *Chicago Railways Co.* 270 Ill. 34, and *Nixon* v. *City of Chicago,* 212 Ill. App. 365 (*certiorari* denied) all held erroneously that an abutting property owner could recover damages for removal of lateral support of structures on his land, by excavation in the adjoining street. It insists we should overrule those decisions. However, in the *Barnard case,* page 32, this court said: "The right of an abutting owner in the soil of the street for the support of his building does not determine the question of the appellee's liability. The basis of the appellants' action is the deprivation of their right to the use and enjoyment of their property free from disturbance. No one could interfere with their premises by digging away the support of their building and defend an action for damages on the ground that the appellants had no legal right to such support, unless such person could show a legal right to make the excavation. Such authority could be derived only from a statute. No one may rightfully interfere with the use and enjoyment of abutting property by making changes in the street, whether by altering the grade, erecting structures or making excavations, except when acting under the authority of an act of the legislature. Such an act confers the right to make the changes in the street, but since the constitution of 1870 compensation is required for the damages."

Before 1870 if the city had statutory authority and passed an ordinance under which the excavating was done, the statute and ordinance would be a complete defense.

As in the *Barnard case,* the right invaded here is not that of lateral support, but is rather that of the right to the use and enjoyment of property without interference. The plaintiff had a right to the undisturbed occupation and enjoyment of his property. In the absence of statutory authority the construction of a tunnel in the street was a public nuisance and anyone who sustains special damages from a public nuisance may maintain an action. (*Barnard* v. *City of Chicago, supra,* and cases cited therein.) The appellant admits that the land owner can now recover damages that the city would not have had to pay prior to 1870 because it had statutory authority for the structure in the street.

The plaintiff has sustained damages within the meaning of the constitution and he should receive compensation therefor. By his precautionary measures in having his building shored up, he has undisputedly prevented far greater damage to his property, as the evidence shows that the foundation of his building did in fact sink even though the building was shored up. Expenses reasonably and prudently incurred in good faith in making a proper effort to diminish the loss may be recovered. (*Peck* v. *Chicago Railways Co. supra.*) They are considered a diminution in the fair cash market value of the real estate. Therefore, plaintiff was entitled to recover the amount he spent in preventing more serious damage to his building, and the judgment of the superior court of Cook county is correct.

*Judgment affirmed.*

Shaw and Wilson, JJ., dissenting.